23-2969

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

NETCHOICE, LLC,

Appellee,

v.

ROB BONTA,

Appellant.

---

On Appeal from the United States District Court
for the Northern District of California

No. 5:22-cv-08861-BLF
The Honorable Beth Labson Freeman, Judge

**ADDENDUM**

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
ANYA M. BINSACCA
Supervising Deputy Attorney General
ELIZABETH WATSON
Deputy Attorney General
State Bar No. 295221
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3847
  Email: Elizabeth.Watson@doj.ca.gov
*Attorneys for Defendant-Appellant*

## TABLE OF CONTENTS

**Page**

California Assembly Bill No.
 2273 (2022)..................................................................................ADD-1

California Assembly Bill No.
 2273 (2022)..................................................................................ADD-11

California Civil Code
 § 1798.140................................................................................ADD-20

United States Constitution
 First Amendment.......................................................................ADD-32



STATE OF CALIFORNIA
AUTHENTICATED
ELECTRONIC LEGAL MATERIAL

## Assembly Bill No. 2273

CHAPTER 320

An act to add Title 1.81.47 (commencing with Section 1798.99.28) to Part 4 of Division 3 of, and to repeal Section 1798.99.32 of, the Civil Code, relating to consumer privacy.

[Approved by Governor September 15, 2022. Filed with
Secretary of State September 15, 2022.]

LEGISLATIVE COUNSEL'S DIGEST

AB 2273, Wicks. The California Age-Appropriate Design Code Act.

(1) Existing law, the California Privacy Rights Act of 2020, approved by the voters as Proposition 24 at the November 3, 2020, statewide general election, establishes the California Privacy Protection Agency. Existing law vests the agency with full administrative power, authority, and jurisdiction to implement and enforce the California Consumer Privacy Act of 2018 and requires the agency to be governed by a board. Existing law requires businesses to protect consumer privacy and information, make certain disclosures to consumers regarding a consumer's rights under the act in a specified manner, and disclose to consumers that a consumer has the right to request specific pieces of information, including the categories of information those businesses have collected about that consumer.

Existing law, the Parent's Accountability and Child Protection Act, requires a person or business that conducts business in California and that seeks to sell specified products or services to take reasonable steps to ensure that the purchaser is of legal age at the time of purchase or delivery, including verifying the age of the purchaser. Existing law prohibits a person or business that is required to comply with these provisions from retaining, using, or disclosing any information it receives in an effort to verify age from a purchaser or recipient for any other purpose, except as specified, and subjects a business or person that violates these provisions to a civil penalty.

This bill would enact the California Age-Appropriate Design Code Act, which, commencing July 1, 2024, would, among other things, require a business that provides an online service, product, or feature likely to be accessed by children to comply with specified requirements, including a requirement to configure all default privacy settings offered by the online service, product, or feature to the settings that offer a high level of privacy, unless the business can demonstrate a compelling reason that a different setting is in the best interests of children, and to provide privacy information, terms of service, policies, and community standards concisely, prominently, and using clear language suited to the age of children likely to access that online service, product, or feature. The bill would require a business, before any new online services, products, or features are offered to the public, to

93

Ch. 320 — 2 —

complete a Data Protection Impact Assessment, as defined, for any online service, product, or feature likely to be accessed by children and maintain documentation of this assessment as long as the online service, product, or feature is likely to be accessed by children. The bill would require a business to make a Data Protection Impact Assessment available, within 5 business days, to the Attorney General pursuant to a written request and would exempt a Data Protection Impact Assessment from public disclosure, as prescribed. The bill would prohibit a business that provides an online service, product, or feature likely to be accessed by children from taking proscribed action, including, if the end user is a child, using personal information for any reason other than a reason for which the personal information was collected, unless the business can demonstrate a compelling reason that use of the personal information is in the best interests of children.

This bill would create the California Children's Data Protection Working Group to deliver a report to the Legislature regarding best practices for the implementation of these provisions, as specified. The bill would require the members of the working group to have certain expertise, including in the areas of children's data privacy and children's rights. The bill would require the working group to take input from a broad range of stakeholders, including from academia, consumer advocacy groups, and small, medium, and large businesses affected by data privacy policies, and make prescribed recommendations on best practices, including identifying online services, products, or features likely to be accessed by children.

This bill would authorize the Attorney General to seek an injunction or civil penalty against any business that violates its provisions. The bill would hold violators liable for a civil penalty of not more than $2,500 per affected child for each negligent violation or not more than $7,500 per affected child for each intentional violation. The bill would require any penalties, fees, and expenses recovered in an action brought under the act to be deposited in the Consumer Privacy Fund with the intent that they be used to fully offset costs incurred by the Attorney General in connection with the act.

(2) The California Privacy Rights Act of 2020 authorizes the Legislature to amend the act to further the purposes and intent of the act by a majority vote of both houses of the Legislature, as specified.

This bill would declare that its provisions further the purposes and intent of the California Privacy Rights Act of 2020.

(3) Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

*The people of the State of California do enact as follows:*

SECTION 1. (a) The Legislature hereby finds and declares all of the following:

(1)  The United Nations Convention on the Rights of the Child recognizes that children need special safeguards and care in all aspects of their lives.

(2)  As children spend more of their time interacting with the online world, the impact of the design of online products and services on children's well-being has become a focus of significant concern.

(3)  There is bipartisan agreement at the international level, in both the United States and in the State of California, that more needs to be done to create a safer online space for children to learn, explore, and play.

(4)  Lawmakers around the globe have taken steps to enhance privacy protections for children on the understanding that, in relation to data protection, greater privacy necessarily means greater security and well-being.

(5)  Children should be afforded protections not only by online products and services specifically directed at them, but by all online products and services they are likely to access. In order to help support the design of online products, services, and features, businesses should take into account the unique needs of different age ranges, including the following developmental stages: 0 to 5 years of age or "preliterate and early literacy"; 6 to 9 years of age or "core primary school years"; 10 to 12 years of age or "transition years"; 13 to 15 years of age or "early teens"; and 16 to 17 years of age or "approaching adulthood."

(6)  In 2019, 81 percent of voters said they wanted to prohibit companies from collecting personal information about children without parental consent, and a 2018 poll of Californian parents and teens found that only 36 percent of teenagers and 32 percent of parents say that social networking internet websites do a good job explaining what they do with users' data.

(7)  While it is clear that the same data protection regime may not be appropriate for children of all ages, children of all ages should nonetheless be afforded privacy and protection, and online products and services should adopt data protection regimes appropriate for children of the ages likely to access those products and services.

(8)  Online services, products, or features that are likely to be accessed by children should offer strong privacy protections by design and by default, including by disabling features that profile children using their previous behavior, browsing history, or assumptions of their similarity to other children, to offer detrimental material.

(9)  Ensuring robust privacy protections for children by design is consistent with the intent of the Legislature in passing the California Consumer Privacy Act of 2018, and with the intent of the people of the State of California in passing the California Privacy Rights Act of 2020, which finds and declares that children are particularly vulnerable from a negotiating perspective with respect to their privacy rights.

(10)  The California Privacy Protection Agency, created by the California Privacy Rights Act of 2020, has substantial and growing expertise that is integral to the development of privacy policy in California.

(b)  Therefore, it is the intent of the Legislature to promote privacy protections for children pursuant to the California Age-Appropriate Design Code Act.

Ch. 320                          — 4 —

(c)  It is the intent of the Legislature that the California Age-Appropriate Design Code promote innovation by businesses whose online products, services, or features are likely to be accessed by children by ensuring that those online products, services, or features are designed in a manner that recognizes the distinct needs of children at different age ranges.

(d)  It is the intent of the Legislature that businesses covered by the California Age-Appropriate Design Code may look to guidance and innovation in response to the Age-Appropriate Design Code established in the United Kingdom when developing online services, products, or features likely to be accessed by children.

(e)  It is the intent of the Legislature that the California Children's Data Protection Working Group consider the guidance provided by the Information Commissioner's Office in the United Kingdom when developing and reviewing best practices or other recommendations related to the California Age-Appropriate Design Code.

(f)  It is the intent of the Legislature that the California Children's Data Protection Working Group and the Department of Justice leverage the substantial and growing expertise of the California Privacy Protection Agency in the implementation of this title.

SEC. 2.  Title 1.81.47 (commencing with Section 1798.99.28) is added to Part 4 of Division 3 of the Civil Code, to read:

## TITLE 1.81.47.  THE CALIFORNIA AGE-APPROPRIATE DESIGN CODE ACT

1798.99.28.  This title shall be known, and may be cited, as the California Age-Appropriate Design Code Act.

1798.99.29.  The Legislature declares that children should be afforded protections not only by online products and services specifically directed at them but by all online products and services they are likely to access and makes the following findings:

(a)  Businesses that develop and provide online services, products, or features that children are likely to access should consider the best interests of children when designing, developing, and providing that online service, product, or feature.

(b)  If a conflict arises between commercial interests and the best interests of children, companies should prioritize the privacy, safety, and well-being of children over commercial interests.

1798.99.30.  (a)  For purposes of this title, the definitions in Section 1798.140 shall apply unless otherwise specified in this title.

(b)  For the purposes of this title:

(1)  "Child" or "children," unless otherwise specified, means a consumer or consumers who are under 18 years of age.

(2)  "Data Protection Impact Assessment" means a systematic survey to assess and mitigate risks that arise from the data management practices of the business to children who are reasonably likely to access the online

— 5 —                              Ch. 320

service, product, or feature at issue that arises from the provision of that online service, product, or feature.

(3)  "Default" means a preselected option adopted by the business for the online service, product, or feature.

(4)  "Likely to be accessed by children" means it is reasonable to expect, based on the following indicators, that the online service, product, or feature would be accessed by children:

(A)  The online service, product, or feature is directed to children as defined by the Children's Online Privacy Protection Act (15 U.S.C. Sec. 6501 et seq.).

(B)  The online service, product, or feature is determined, based on competent and reliable evidence regarding audience composition, to be routinely accessed by a significant number of children.

(C)  An online service, product, or feature with advertisements marketed to children.

(D)  An online service, product, or feature that is substantially similar or the same as an online service, product, or feature subject to subparagraph (B).

(E)  An online service, product, or feature that has design elements that are known to be of interest to children, including, but not limited to, games, cartoons, music, and celebrities who appeal to children.

(F)  A significant amount of the audience of the online service, product, or feature is determined, based on internal company research, to be children.

(5)  "Online service, product, or feature" does not mean any of the following:

(A)  A broadband internet access service, as defined in Section 3100.

(B)  A telecommunications service, as defined in Section 153 of Title 47 of the United States Code.

(C)  The delivery or use of a physical product.

(6)  "Profiling" means any form of automated processing of personal information that uses personal information to evaluate certain aspects relating to a natural person, including analyzing or predicting aspects concerning a natural person's performance at work, economic situation, health, personal preferences, interests, reliability, behavior, location, or movements.

1798.99.31.  (a)  A business that provides an online service, product, or feature likely to be accessed by children shall take all of the following actions:

(1)  (A)  Before any new online services, products, or features are offered to the public, complete a Data Protection Impact Assessment for any online service, product, or feature likely to be accessed by children and maintain documentation of this assessment as long as the online service, product, or feature is likely to be accessed by children. A business shall biennially review all Data Protection Impact Assessments.

(B)  The Data Protection Impact Assessment required by this paragraph shall identify the purpose of the online service, product, or feature, how it uses children's personal information, and the risks of material detriment to children that arise from the data management practices of the business. The

93

Data Protection Impact Assessment shall address, to the extent applicable, all of the following:

(i)  Whether the design of the online product, service, or feature could harm children, including by exposing children to harmful, or potentially harmful, content on the online product, service, or feature.

(ii)  Whether the design of the online product, service, or feature could lead to children experiencing or being targeted by harmful, or potentially harmful, contacts on the online product, service, or feature.

(iii)  Whether the design of the online product, service, or feature could permit children to witness, participate in, or be subject to harmful, or potentially harmful, conduct on the online product, service, or feature.

(iv)  Whether the design of the online product, service, or feature could allow children to be party to or exploited by a harmful, or potentially harmful, contact on the online product, service, or feature.

(v)  Whether algorithms used by the online product, service, or feature could harm children.

(vi)  Whether targeted advertising systems used by the online product, service, or feature could harm children.

(vii)  Whether and how the online product, service, or feature uses system design features to increase, sustain, or extend use of the online product, service, or feature by children, including the automatic playing of media, rewards for time spent, and notifications.

(viii)  Whether, how, and for what purpose the online product, service, or feature collects or processes sensitive personal information of children.

(2)  Document any risk of material detriment to children that arises from the data management practices of the business identified in the Data Protection Impact Assessment required by paragraph (1) and create a timed plan to mitigate or eliminate the risk before the online service, product, or feature is accessed by children.

(3)  Within three business days of a written request by the Attorney General, provide to the Attorney General a list of all Data Protection Impact Assessments the business has completed.

(4)  (A)  For any Data Protection Impact Assessment completed pursuant to paragraph (1), make the Data Protection Impact Assessment available, within five business days, to the Attorney General pursuant to a written request.

(B)  Notwithstanding any other law, a Data Protection Impact Assessment is protected as confidential and shall be exempt from public disclosure, including under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code).

(C)  To the extent any information contained in a Data Protection Impact Assessment disclosed to the Attorney General includes information subject to attorney-client privilege or work product protection, disclosure pursuant to this paragraph shall not constitute a waiver of that privilege or protection.

(5)  Estimate the age of child users with a reasonable level of certainty appropriate to the risks that arise from the data management practices of

— 7 —                              **Ch. 320**

the business or apply the privacy and data protections afforded to children to all consumers.

(6)  Configure all default privacy settings provided to children by the online service, product, or feature to settings that offer a high level of privacy, unless the business can demonstrate a compelling reason that a different setting is in the best interests of children.

(7)  Provide any privacy information, terms of service, policies, and community standards concisely, prominently, and using clear language suited to the age of children likely to access that online service, product, or feature.

(8)  If the online service, product, or feature allows the child's parent, guardian, or any other consumer to monitor the child's online activity or track the child's location, provide an obvious signal to the child when the child is being monitored or tracked.

(9)  Enforce published terms, policies, and community standards established by the business, including, but not limited to, privacy policies and those concerning children.

(10)  Provide prominent, accessible, and responsive tools to help children, or if applicable their parents or guardians, exercise their privacy rights and report concerns.

(b)  A business that provides an online service, product, or feature likely to be accessed by children shall not take any of the following actions:

(1)  Use the personal information of any child in a way that the business knows, or has reason to know, is materially detrimental to the physical health, mental health, or well-being of a child.

(2)  Profile a child by default unless both of the following criteria are met:

(A)  The business can demonstrate it has appropriate safeguards in place to protect children.

(B)  Either of the following is true:

(i)  Profiling is necessary to provide the online service, product, or feature requested and only with respect to the aspects of the online service, product, or feature with which the child is actively and knowingly engaged.

(ii)  The business can demonstrate a compelling reason that profiling is in the best interests of children.

(3)  Collect, sell, share, or retain any personal information that is not necessary to provide an online service, product, or feature with which a child is actively and knowingly engaged, or as described in paragraphs (1) to (4), inclusive, of subdivision (a) of Section 1798.145, unless the business can demonstrate a compelling reason that the collecting, selling, sharing, or retaining of the personal information is in the best interests of children likely to access the online service, product, or feature.

(4)  If the end user is a child, use personal information for any reason other than a reason for which that personal information was collected, unless the business can demonstrate a compelling reason that use of the personal information is in the best interests of children.

93

**ADD-7**

Ch. 320 — 8 —

(5) Collect, sell, or share any precise geolocation information of children by default unless the collection of that precise geolocation information is strictly necessary for the business to provide the service, product, or feature requested and then only for the limited time that the collection of precise geolocation information is necessary to provide the service, product, or feature.

(6) Collect any precise geolocation information of a child without providing an obvious sign to the child for the duration of that collection that precise geolocation information is being collected.

(7) Use dark patterns to lead or encourage children to provide personal information beyond what is reasonably expected to provide that online service, product, or feature to forego privacy protections, or to take any action that the business knows, or has reason to know, is materially detrimental to the child's physical health, mental health, or well-being.

(8) Use any personal information collected to estimate age or age range for any other purpose or retain that personal information longer than necessary to estimate age. Age assurance shall be proportionate to the risks and data practice of an online service, product, or feature.

(c) (1) A Data Protection Impact Assessment conducted by a business for the purpose of compliance with any other law complies with this section if the Data Protection Impact Assessment meets the requirements of this title.

(2) A single data protection impact assessment may contain multiple similar processing operations that present similar risks only if each relevant online service, product, or feature is addressed.

(d) This section shall become operative on July 1, 2024.

1798.99.32.  (a) The California Children's Data Protection Working Group is hereby created to deliver a report to the Legislature, pursuant to subdivision (e), regarding best practices for the implementation of this title.

(b) Working Group members shall consist of Californians with expertise in at least two of the following areas:

(1) Children's data privacy.

(2) Physical health.

(3) Mental health and well-being.

(4) Computer science.

(5) Children's rights.

(c) The working group shall select a chair and a vice chair from among its members and shall consist of the following 10 members:

(1) Two appointees by the Governor.

(2) Two appointees by the President Pro Tempore of the Senate.

(3) Two appointees by the Speaker of the Assembly.

(4) Two appointees by the Attorney General.

(5) Two appointees by the California Privacy Protection Agency.

(d) The working group shall take input from a broad range of stakeholders, including from academia, consumer advocacy groups, and small, medium, and large businesses affected by data privacy policies and

— 9 —                    Ch. 320

shall make recommendations to the Legislature on best practices regarding, at minimum, all of the following:

(1)  Identifying online services, products, or features likely to be accessed by children.

(2)  Evaluating and prioritizing the best interests of children with respect to their privacy, physical health, and mental health and well-being and evaluating how those interests may be furthered by the design, development, and implementation of an online service, product, or feature.

(3)  Ensuring that age assurance methods used by businesses that provide online services, products, or features likely to be accessed by children are proportionate to the risks that arise from the data management practices of the business, privacy protective, and minimally invasive.

(4)  Assessing and mitigating risks to children that arise from the use of an online service, product, or feature.

(5)  Publishing privacy information, policies, and standards in concise, clear language suited for the age of children likely to access an online service, product, or feature.

(6)  How the working group and the Department of Justice may leverage the substantial and growing expertise of the California Privacy Protection Agency in the long-term development of data privacy policies that affect the privacy, rights, and safety of children online.

(e)  On or before January 1, 2024, and every two years thereafter, the working group shall submit, pursuant to Section 9795 of the Government Code, a report to the Legislature regarding the recommendations described in subdivision (d).

(f)  The members of the working group shall serve without compensation but shall be reimbursed for all necessary expenses actually incurred in the performance of their duties.

(g)  This section shall remain in effect until January 1, 2030, and as of that date is repealed.

1798.99.33.  (a)  A business shall complete a Data Protection Impact Assessment on or before July 1, 2024, for any online service, product, or feature likely to be accessed by children offered to the public before July 1, 2024.

(b)  This section does not apply to an online service, product, or feature that is not offered to the public on or after July 1, 2024.

1798.99.35.  (a)  Any business that violates this title shall be subject to an injunction and liable for a civil penalty of not more than two thousand five hundred dollars ($2,500) per affected child for each negligent violation or not more than seven thousand five hundred dollars ($7,500) per affected child for each intentional violation, which shall be assessed and recovered only in a civil action brought in the name of the people of the State of California by the Attorney General.

(b)  Any penalties, fees, and expenses recovered in an action brought under this title shall be deposited in the Consumer Privacy Fund, created within the General Fund pursuant to subdivision (a) of Section 1798.160,

93

Ch. 320 — 10 —

with the intent that they be used to fully offset costs incurred by the Attorney General in connection with this title.

(c) (1) If a business is in substantial compliance with the requirements of paragraphs (1) through (4), inclusive, of subdivision (a) of Section 1798.99.31, the Attorney General shall provide written notice to the business, before initiating an action under this title, identifying the specific provisions of this title that the Attorney General alleges have been or are being violated.

(2) If, within 90 days of the notice required by this subdivision, the business cures any noticed violation and provides the Attorney General a written statement that the alleged violations have been cured, and sufficient measures have been taken to prevent future violations, the business shall not be liable for a civil penalty for any violation cured pursuant to this subdivision.

(d) Nothing in this title shall be interpreted to serve as the basis for a private right of action under this title or any other law.

(e) The Attorney General may solicit broad public participation and adopt regulations to clarify the requirements of this title.

1798.99.40. This title does not apply to the information or entities described in subdivision (c) of Section 1798.145.

SEC. 3. The Legislature finds and declares that this act furthers the purposes and intent of the California Privacy Rights Act of 2020.

SEC. 4. The Legislature finds and declares that Section 2 of this act, which adds Title 1.81.46 (commencing with Section 1798.99.28) to Part 4 of Division 3 of the Civil Code, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

The limitation is needed to encourage businesses, by protecting their proprietary interests, to mitigate risks to children online.

O

2021 California Assembly Bill No. 2273, California 2021-2022 Regular Session

CALIFORNIA BILL TEXT

**TITLE: The California Age-Appropriate Design Code Act.**

VERSION: Adopted
September 15, 2022
Wicks (A) , Cunningham (A) , Petrie-Norris (A), Allen (S) , Newman (S) , Stern (S)
📄 Image 1 within document in PDF format.
SUMMARY: An act to add Title 1.81.47 (commencing with Section 1798.99.28) to Part 4 of Division 3 of, and to repeal Section 1798.99.32 of, the Civil Code, relating to consumer privacy.

**TEXT:**

Assembly Bill No. 2273

CHAPTER 320

An act to add Title 1.81.47 (commencing with Section 1798.99.28) to Part 4 of Division 3 of, and to repeal Section 1798.99.32 of, the Civil Code, relating to consumer privacy.

[Approved by Governor September 15, 2022. Filed with Secretary of State September 15, 2022.]

LEGISLATIVE COUNSEL'S DIGEST

AB 2273, Wicks. The California Age-Appropriate Design Code Act.

(1) Existing law, the California Privacy Rights Act of 2020, approved by the voters as Proposition 24 at the November 3, 2020, statewide general election, establishes the California Privacy Protection Agency. Existing law vests the agency with full administrative power, authority, and jurisdiction to implement and enforce the California Consumer Privacy Act of 2018 and requires the agency to be governed by a board. Existing law requires businesses to protect consumer privacy and information, make certain disclosures to consumers regarding a consumer's rights under the act in a specified manner, and disclose to consumers that a consumer has the right to request specific pieces of information, including the categories of information those businesses have collected about that consumer.

Existing law, the Parent's Accountability and Child Protection Act, requires a person or business that conducts business in California and that seeks to sell specified products or services to take reasonable steps to ensure that the purchaser is of legal age at the time of purchase or delivery, including verifying the age of the purchaser. Existing law prohibits a person or business that is required to comply with these provisions from retaining, using, or disclosing any information it receives in an effort to verify age from a purchaser or recipient for any other purpose, except as specified, and subjects a business or person that violates these provisions to a civil penalty.

This bill would enact the California Age-Appropriate Design Code Act, which, commencing July 1, 2024, would, among other things, require a business that provides an online service, product, or feature likely to be accessed by children to comply with specified requirements, including a requirement to configure all default privacy settings offered by the online service, product, or feature to the settings that offer a high level of privacy, unless the business can demonstrate a compelling reason that a different setting is in the best interests of children, and to provide privacy information, terms of service, policies, and community standards concisely, prominently, and using clear language suited to the age of children likely to access that online service,

**ADD-11**

**2021 California Assembly Bill No. 2273, California..., 2021 California...**

product, or feature. The bill would require a business, before any new online services, products, or features are offered to the public, to complete a Data Protection Impact Assessment, as defined, for any online service, product, or feature likely to be accessed by children and maintain documentation of this assessment as long as the online service, product, or feature is likely to be accessed by children. The bill would require a business to make a Data Protection Impact Assessment available, within 5 business days, to the Attorney General pursuant to a written request and would exempt a Data Protection Impact Assessment from public disclosure, as prescribed. The bill would prohibit a business that provides an online service, product, or feature likely to be accessed by children from taking proscribed action, including, if the end user is a child, using personal information for any reason other than a reason for which the personal information was collected, unless the business can demonstrate a compelling reason that use of the personal information is in the best interests of children.

This bill would create the California Children's Data Protection Working Group to deliver a report to the Legislature regarding best practices for the implementation of these provisions, as specified. The bill would require the members of the working group to have certain expertise, including in the areas of children's data privacy and children's rights. The bill would require the working group to take input from a broad range of stakeholders, including from academia, consumer advocacy groups, and small, medium, and large businesses affected by data privacy policies, and make prescribed recommendations on best practices, including identifying online services, products, or features likely to be accessed by children.

This bill would authorize the Attorney General to seek an injunction or civil penalty against any business that violates its provisions. The bill would hold violators liable for a civil penalty of not more than $2,500 per affected child for each negligent violation or not more than $7,500 per affected child for each intentional violation. The bill would require any penalties, fees, and expenses recovered in an action brought under the act to be deposited in the Consumer Privacy Fund with the intent that they be used to fully offset costs incurred by the Attorney General in connection with the act.

(2) The California Privacy Rights Act of 2020 authorizes the Legislature to amend the act to further the purposes and intent of the act by a majority vote of both houses of the Legislature, as specified.

This bill would declare that its provisions further the purposes and intent of the California Privacy Rights Act of 2020.

(3) Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

The people of the State of California do enact as follows:

SECTION 1. (a) The Legislature hereby finds and declares all of the following:

(1) The United Nations Convention on the Rights of the Child recognizes that children need special safeguards and care in all aspects of their lives.

(2) As children spend more of their time interacting with the online world, the impact of the design of online products and services on children's well-being has become a focus of significant concern.

(3) There is bipartisan agreement at the international level, in both the United States and in the State of California, that more needs to be done to create a safer online space for children to learn, explore, and play.

(4) Lawmakers around the globe have taken steps to enhance privacy protections for children on the understanding that, in relation to data protection, greater privacy necessarily means greater security and well-being.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**ADD-12**

(5) Children should be afforded protections not only by online products and services specifically directed at them, but by all online products and services they are likely to access. In order to help support the design of online products, services, and features, businesses should take into account the unique needs of different age ranges, including the following developmental stages: 0 to 5 years of age or "preliterate and early literacy"; 6 to 9 years of age or "core primary school years"; 10 to 12 years of age or "transition years"; 13 to 15 years of age or "early teens"; and 16 to 17 years of age or "approaching adulthood."

(6) In 2019, 81 percent of voters said they wanted to prohibit companies from collecting personal information about children without parental consent, and a 2018 poll of Californian parents and teens found that only 36 percent of teenagers and 32 percent of parents say that social networking internet websites do a good job explaining what they do with users' data.

(7) While it is clear that the same data protection regime may not be appropriate for children of all ages, children of all ages should nonetheless be afforded privacy and protection, and online products and services should adopt data protection regimes appropriate for children of the ages likely to access those products and services.

(8) Online services, products, or features that are likely to be accessed by children should offer strong privacy protections by design and by default, including by disabling features that profile children using their previous behavior, browsing history, or assumptions of their similarity to other children, to offer detrimental material.

(9) Ensuring robust privacy protections for children by design is consistent with the intent of the Legislature in passing the California Consumer Privacy Act of 2018, and with the intent of the people of the State of California in passing the California Privacy Rights Act of 2020, which finds and declares that children are particularly vulnerable from a negotiating perspective with respect to their privacy rights.

(10) The California Privacy Protection Agency, created by the California Privacy Rights Act of 2020, has substantial and growing expertise that is integral to the development of privacy policy in California.

(b) Therefore, it is the intent of the Legislature to promote privacy protections for children pursuant to the California Age-Appropriate Design Code Act.

(c) It is the intent of the Legislature that the California Age-Appropriate Design Code promote innovation by businesses whose online products, services, or features are likely to be accessed by children by ensuring that those online products, services, or features are designed in a manner that recognizes the distinct needs of children at different age ranges.

(d) It is the intent of the Legislature that businesses covered by the California Age-Appropriate Design Code may look to guidance and innovation in response to the Age-Appropriate Design Code established in the United Kingdom when developing online services, products, or features likely to be accessed by children.

(e) It is the intent of the Legislature that the California Children's Data Protection Working Group consider the guidance provided by the Information Commissioner's Office in the United Kingdom when developing and reviewing best practices or other recommendations related to the California Age-Appropriate Design Code.

(f) It is the intent of the Legislature that the California Children's Data Protection Working Group and the Department of Justice leverage the substantial and growing expertise of the California Privacy Protection Agency in the implementation of this title.

SEC. 2. Title 1.81.47 (commencing with Section 1798.99.28) is added to Part 4 of Division 3 of the Civil Code, to read:

TITLE 1.81.47. THE CALIFORNIA AGE-APPROPRIATE DESIGN CODE ACT

**ADD-13**

1798.99.28. This title shall be known, and may be cited, as the California Age-Appropriate Design Code Act.

1798.99.29. The Legislature declares that children should be afforded protections not only by online products and services specifically directed at them but by all online products and services they are likely to access and makes the following findings:

(a) Businesses that develop and provide online services, products, or features that children are likely to access should consider the best interests of children when designing, developing, and providing that online service, product, or feature.

(b) If a conflict arises between commercial interests and the best interests of children, companies should prioritize the privacy, safety, and well-being of children over commercial interests.

1798.99.30. (a) For purposes of this title, the definitions in Section 1798.140 shall apply unless otherwise specified in this title.

(b) For the purposes of this title:

(1) "Child" or "children," unless otherwise specified, means a consumer or consumers who are under 18 years of age.

(2) "Data Protection Impact Assessment" means a systematic survey to assess and mitigate risks that arise from the data management practices of the business to children who are reasonably likely to access the online service, product, or feature at issue that arises from the provision of that online service, product, or feature.

(3) "Default" means a preselected option adopted by the business for the online service, product, or feature.

(4) "Likely to be accessed by children" means it is reasonable to expect, based on the following indicators, that the online service, product, or feature would be accessed by children:

(A) The online service, product, or feature is directed to children as defined by the Children's Online Privacy Protection Act (15 U.S.C. Sec. 6501 et seq.).

(B) The online service, product, or feature is determined, based on competent and reliable evidence regarding audience composition, to be routinely accessed by a significant number of children.

(C) An online service, product, or feature with advertisements marketed to children.

(D) An online service, product, or feature that is substantially similar or the same as an online service, product, or feature subject to subparagraph (B).

(E) An online service, product, or feature that has design elements that are known to be of interest to children, including, but not limited to, games, cartoons, music, and celebrities who appeal to children.

(F) A significant amount of the audience of the online service, product, or feature is determined, based on internal company research, to be children.

(5) "Online service, product, or feature" does not mean any of the following:

(A) A broadband internet access service, as defined in Section 3100.

(B) A telecommunications service, as defined in Section 153 of Title 47 of the United States Code.

**ADD-14**

(C) The delivery or use of a physical product.

(6) "Profiling" means any form of automated processing of personal information that uses personal information to evaluate certain aspects relating to a natural person, including analyzing or predicting aspects concerning a natural person's performance at work, economic situation, health, personal preferences, interests, reliability, behavior, location, or movements.

1798.99.31. (a) A business that provides an online service, product, or feature likely to be accessed by children shall take all of the following actions:

(1) (A) Before any new online services, products, or features are offered to the public, complete a Data Protection Impact Assessment for any online service, product, or feature likely to be accessed by children and maintain documentation of this assessment as long as the online service, product, or feature is likely to be accessed by children. A business shall biennially review all Data Protection Impact Assessments.

(B) The Data Protection Impact Assessment required by this paragraph shall identify the purpose of the online service, product, or feature, how it uses children's personal information, and the risks of material detriment to children that arise from the data management practices of the business. The Data Protection Impact Assessment shall address, to the extent applicable, all of the following:

(i) Whether the design of the online product, service, or feature could harm children, including by exposing children to harmful, or potentially harmful, content on the online product, service, or feature.

(ii) Whether the design of the online product, service, or feature could lead to children experiencing or being targeted by harmful, or potentially harmful, contacts on the online product, service, or feature.

(iii) Whether the design of the online product, service, or feature could permit children to witness, participate in, or be subject to harmful, or potentially harmful, conduct on the online product, service, or feature.

(iv) Whether the design of the online product, service, or feature could allow children to be party to or exploited by a harmful, or potentially harmful, contact on the online product, service, or feature.

(v) Whether algorithms used by the online product, service, or feature could harm children.

(vi) Whether targeted advertising systems used by the online product, service, or feature could harm children.

(vii) Whether and how the online product, service, or feature uses system design features to increase, sustain, or extend use of the online product, service, or feature by children, including the automatic playing of media, rewards for time spent, and notifications.

(viii) Whether, how, and for what purpose the online product, service, or feature collects or processes sensitive personal information of children.

(2) Document any risk of material detriment to children that arises from the data management practices of the business identified in the Data Protection Impact Assessment required by paragraph (1) and create a timed plan to mitigate or eliminate the risk before the online service, product, or feature is accessed by children.

(3) Within three business days of a written request by the Attorney General, provide to the Attorney General a list of all Data Protection Impact Assessments the business has completed.

**ADD-15**

2021 California Assembly Bill No. 2273, California..., 2021 California...

(4) (A) For any Data Protection Impact Assessment completed pursuant to paragraph (1), make the Data Protection Impact Assessment available, within five business days, to the Attorney General pursuant to a written request.

(B) Notwithstanding any other law, a Data Protection Impact Assessment is protected as confidential and shall be exempt from public disclosure, including under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code).

(C) To the extent any information contained in a Data Protection Impact Assessment disclosed to the Attorney General includes information subject to attorney-client privilege or work product protection, disclosure pursuant to this paragraph shall not constitute a waiver of that privilege or protection.

(5) Estimate the age of child users with a reasonable level of certainty appropriate to the risks that arise from the data management practices of the business or apply the privacy and data protections afforded to children to all consumers.

(6) Configure all default privacy settings provided to children by the online service, product, or feature to settings that offer a high level of privacy, unless the business can demonstrate a compelling reason that a different setting is in the best interests of children.

(7) Provide any privacy information, terms of service, policies, and community standards concisely, prominently, and using clear language suited to the age of children likely to access that online service, product, or feature.

(8) If the online service, product, or feature allows the child's parent, guardian, or any other consumer to monitor the child's online activity or track the child's location, provide an obvious signal to the child when the child is being monitored or tracked.

(9) Enforce published terms, policies, and community standards established by the business, including, but not limited to, privacy policies and those concerning children.

(10) Provide prominent, accessible, and responsive tools to help children, or if applicable their parents or guardians, exercise their privacy rights and report concerns.

(b) A business that provides an online service, product, or feature likely to be accessed by children shall not take any of the following actions:

(1) Use the personal information of any child in a way that the business knows, or has reason to know, is materially detrimental to the physical health, mental health, or well-being of a child.

(2) Profile a child by default unless both of the following criteria are met:

(A) The business can demonstrate it has appropriate safeguards in place to protect children.

(B) Either of the following is true:

(i) Profiling is necessary to provide the online service, product, or feature requested and only with respect to the aspects of the online service, product, or feature with which the child is actively and knowingly engaged.

(ii) The business can demonstrate a compelling reason that profiling is in the best interests of children.

(3) Collect, sell, share, or retain any personal information that is not necessary to provide an online service, product, or feature with which a child is actively and knowingly engaged, or as described in paragraphs (1) to (4), inclusive, of subdivision (a) of

**ADD-16**

**2021 California Assembly Bill No. 2273, California..., 2021 California...**

Section 1798.145, unless the business can demonstrate a compelling reason that the collecting, selling, sharing, or retaining of the personal information is in the best interests of children likely to access the online service, product, or feature.

(4) If the end user is a child, use personal information for any reason other than a reason for which that personal information was collected, unless the business can demonstrate a compelling reason that use of the personal information is in the best interests of children.

(5) Collect, sell, or share any precise geolocation information of children by default unless the collection of that precise geolocation information is strictly necessary for the business to provide the service, product, or feature requested and then only for the limited time that the collection of precise geolocation information is necessary to provide the service, product, or feature.

(6) Collect any precise geolocation information of a child without providing an obvious sign to the child for the duration of that collection that precise geolocation information is being collected.

(7) Use dark patterns to lead or encourage children to provide personal information beyond what is reasonably expected to provide that online service, product, or feature to forego privacy protections, or to take any action that the business knows, or has reason to know, is materially detrimental to the child's physical health, mental health, or well-being.

(8) Use any personal information collected to estimate age or age range for any other purpose or retain that personal information longer than necessary to estimate age. Age assurance shall be proportionate to the risks and data practice of an online service, product, or feature.

(c) (1) A Data Protection Impact Assessment conducted by a business for the purpose of compliance with any other law complies with this section if the Data Protection Impact Assessment meets the requirements of this title.

(2) A single data protection impact assessment may contain multiple similar processing operations that present similar risks only if each relevant online service, product, or feature is addressed.

(d) This section shall become operative on July 1, 2024.

1798.99.32. (a) The California Children's Data Protection Working Group is hereby created to deliver a report to the Legislature, pursuant to subdivision (e), regarding best practices for the implementation of this title.

(b) Working Group members shall consist of Californians with expertise in at least two of the following areas:

(1) Children's data privacy.

(2) Physical health.

(3) Mental health and well-being.

(4) Computer science.

(5) Children's rights.

(c) The working group shall select a chair and a vice chair from among its members and shall consist of the following 10 members:

(1) Two appointees by the Governor.

**ADD-17**

**2021 California Assembly Bill No. 2273, California..., 2021 California...**

(2) Two appointees by the President Pro Tempore of the Senate.

(3) Two appointees by the Speaker of the Assembly.

(4) Two appointees by the Attorney General.

(5) Two appointees by the California Privacy Protection Agency.

(d) The working group shall take input from a broad range of stakeholders, including from academia, consumer advocacy groups, and small, medium, and large businesses affected by data privacy policies and shall make recommendations to the Legislature on best practices regarding, at minimum, all of the following:

(1) Identifying online services, products, or features likely to be accessed by children.

(2) Evaluating and prioritizing the best interests of children with respect to their privacy, physical health, and mental health and well-being and evaluating how those interests may be furthered by the design, development, and implementation of an online service, product, or feature.

(3) Ensuring that age assurance methods used by businesses that provide online services, products, or features likely to be accessed by children are proportionate to the risks that arise from the data management practices of the business, privacy protective, and minimally invasive.

(4) Assessing and mitigating risks to children that arise from the use of an online service, product, or feature.

(5) Publishing privacy information, policies, and standards in concise, clear language suited for the age of children likely to access an online service, product, or feature.

(6) How the working group and the Department of Justice may leverage the substantial and growing expertise of the California Privacy Protection Agency in the long-term development of data privacy policies that affect the privacy, rights, and safety of children online.

(e) On or before January 1, 2024, and every two years thereafter, the working group shall submit, pursuant to Section 9795 of the Government Code, a report to the Legislature regarding the recommendations described in subdivision (d).

(f) The members of the working group shall serve without compensation but shall be reimbursed for all necessary expenses actually incurred in the performance of their duties.

(g) This section shall remain in effect until January 1, 2030, and as of that date is repealed.

1798.99.33. (a) A business shall complete a Data Protection Impact Assessment on or before July 1, 2024, for any online service, product, or feature likely to be accessed by children offered to the public before July 1, 2024.

(b) This section does not apply to an online service, product, or feature that is not offered to the public on or after July 1, 2024.

1798.99.35. (a) Any business that violates this title shall be subject to an injunction and liable for a civil penalty of not more than two thousand five hundred dollars ($2,500) per affected child for each negligent violation or not more than seven thousand five hundred dollars ($7,500) per affected child for each intentional violation, which shall be assessed and recovered only in a civil action brought in the name of the people of the State of California by the Attorney General.

**ADD-18**

**2021 California Assembly Bill No. 2273, California..., 2021 California...**

(b) Any penalties, fees, and expenses recovered in an action brought under this title shall be deposited in the Consumer Privacy Fund, created within the General Fund pursuant to subdivision (a) of Section 1798.160, with the intent that they be used to fully offset costs incurred by the Attorney General in connection with this title.

(c) (1) If a business is in substantial compliance with the requirements of paragraphs (1) through (4), inclusive, of subdivision (a) of Section 1798.99.31, the Attorney General shall provide written notice to the business, before initiating an action under this title, identifying the specific provisions of this title that the Attorney General alleges have been or are being violated.

(2) If, within 90 days of the notice required by this subdivision, the business cures any noticed violation and provides the Attorney General a written statement that the alleged violations have been cured, and sufficient measures have been taken to prevent future violations, the business shall not be liable for a civil penalty for any violation cured pursuant to this subdivision.

(d) Nothing in this title shall be interpreted to serve as the basis for a private right of action under this title or any other law.

(e) The Attorney General may solicit broad public participation and adopt regulations to clarify the requirements of this title.

1798.99.40. This title does not apply to the information or entities described in subdivision (c) of Section 1798.145.

SEC. 3. The Legislature finds and declares that this act furthers the purposes and intent of the California Privacy Rights Act of 2020.

SEC. 4. The Legislature finds and declares that Section 2 of this act, which adds Title 1.81.46 (commencing with Section 1798.99.28) to Part 4 of Division 3 of the Civil Code, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

The limitation is needed to encourage businesses, by protecting their proprietary interests, to mitigate risks to children online.

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.                    9

**ADD-19**

§ 1798.140. Definitions [FN 1], CA CIVIL § 1798.140

West's Annotated California Codes
    Civil Code (Refs & Annos)
        Division 3. Obligations (Refs & Annos)
            Part 4. Obligations Arising from Particular Transactions (Refs & Annos)
                Title 1.81.5. California Consumer Privacy Act of 2018 (Refs & Annos)

West's Ann.Cal.Civ.Code § 1798.140

§ 1798.140. Definitions [1]

Effective: January 1, 2023
Currentness

For purposes of this title:

(a) "Advertising and marketing" means a communication by a business or a person acting on the business' behalf in any medium intended to induce a consumer to obtain goods, services, or employment.

(b) "Aggregate consumer information" means information that relates to a group or category of consumers, from which individual consumer identities have been removed, that is not linked or reasonably linkable to any consumer or household, including via a device. "Aggregate consumer information" does not mean one or more individual consumer records that have been deidentified.

(c) "Biometric information" means an individual's physiological, biological, or behavioral characteristics, including information pertaining to an individual's deoxyribonucleic acid (DNA), that is used or is intended to be used singly or in combination with each other or with other identifying data, to establish individual identity. Biometric information includes, but is not limited to, imagery of the iris, retina, fingerprint, face, hand, palm, vein patterns, and voice recordings, from which an identifier template, such as a faceprint, a minutiae template, or a voiceprint, can be extracted, and keystroke patterns or rhythms, gait patterns or rhythms, and sleep, health, or exercise data that contain identifying information.

(d) "Business" means:

(1) A sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners, that collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information, that does business in the State of California, and that satisfies one or more of the following thresholds:

(A) As of January 1 of the calendar year, had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year, as adjusted pursuant to paragraph (5) of subdivision (a) of Section 1798.185.

ADD-20

(B) Alone or in combination, annually buys, sells, or shares the personal information of 100,000 or more consumers or households.

(C) Derives 50 percent or more of its annual revenues from selling or sharing consumers' personal information.

(2) Any entity that controls or is controlled by a business, as defined in paragraph (1), and that shares common branding with the business and with whom the business shares consumers' personal information. "Control" or "controlled" means ownership of, or the power to vote, more than 50 percent of the outstanding shares of any class of voting security of a business; control in any manner over the election of a majority of the directors, or of individuals exercising similar functions; or the power to exercise a controlling influence over the management of a company. "Common branding" means a shared name, servicemark, or trademark that the average consumer would understand that two or more entities are commonly owned.

(3) A joint venture or partnership composed of businesses in which each business has at least a 40 percent interest. For purposes of this title, the joint venture or partnership and each business that composes the joint venture or partnership shall separately be considered a single business, except that personal information in the possession of each business and disclosed to the joint venture or partnership shall not be shared with the other business.

(4) A person that does business in California, that is not covered by paragraph (1), (2), or (3), and that voluntarily certifies to the California Privacy Protection Agency that it is in compliance with, and agrees to be bound by, this title.

(e) "Business purpose" means the use of personal information for the business' operational purposes, or other notified purposes, or for the service provider or contractor's operational purposes, as defined by regulations adopted pursuant to paragraph (11) of subdivision (a) of Section 1798.185, provided that the use of personal information shall be reasonably necessary and proportionate to achieve the purpose for which the personal information was collected or processed or for another purpose that is compatible with the context in which the personal information was collected. Business purposes are:

(1) Auditing related to counting ad impressions to unique visitors, verifying positioning and quality of ad impressions, and auditing compliance with this specification and other standards.

(2) Helping to ensure security and integrity to the extent the use of the consumer's personal information is reasonably necessary and proportionate for these purposes.

(3) Debugging to identify and repair errors that impair existing intended functionality.

(4) Short-term, transient use, including, but not limited to, nonpersonalized advertising shown as part of a consumer's current interaction with the business, provided that the consumer's personal information is not disclosed to another third party and is not used to build a profile about the consumer or otherwise alter the consumer's experience outside the current interaction with the business.

**ADD-21**

§ 1798.140. Definitions [FN 1], CA CIVIL § 1798.140

(5) Performing services on behalf of the business, including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments, providing financing, providing analytic services, providing storage, or providing similar services on behalf of the business.

(6) Providing advertising and marketing services, except for cross-context behavioral advertising, to the consumer provided that, for the purpose of advertising and marketing, a service provider or contractor shall not combine the personal information of opted-out consumers that the service provider or contractor receives from, or on behalf of, the business with personal information that the service provider or contractor receives from, or on behalf of, another person or persons or collects from its own interaction with consumers.

(7) Undertaking internal research for technological development and demonstration.

(8) Undertaking activities to verify or maintain the quality or safety of a service or device that is owned, manufactured, manufactured for, or controlled by the business, and to improve, upgrade, or enhance the service or device that is owned, manufactured, manufactured for, or controlled by the business.

(f) "Collects," "collected," or "collection" means buying, renting, gathering, obtaining, receiving, or accessing any personal information pertaining to a consumer by any means. This includes receiving information from the consumer, either actively or passively, or by observing the consumer's behavior.

(g) "Commercial purposes" means to advance a person's commercial or economic interests, such as by inducing another person to buy, rent, lease, join, subscribe to, provide, or exchange products, goods, property, information, or services, or enabling or effecting, directly or indirectly, a commercial transaction.

(h) "Consent" means any freely given, specific, informed, and unambiguous indication of the consumer's wishes by which the consumer, or the consumer's legal guardian, a person who has power of attorney, or a person acting as a conservator for the consumer, including by a statement or by a clear affirmative action, signifies agreement to the processing of personal information relating to the consumer for a narrowly defined particular purpose. Acceptance of a general or broad terms of use, or similar document, that contains descriptions of personal information processing along with other, unrelated information, does not constitute consent. Hovering over, muting, pausing, or closing a given piece of content does not constitute consent. Likewise, agreement obtained through use of dark patterns does not constitute consent.

(i) "Consumer" means a natural person who is a California resident, as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017, however identified, including by any unique identifier.

(j)(1) "Contractor" means a person to whom the business makes available a consumer's personal information for a business purpose, pursuant to a written contract with the business, provided that the contract:

(A) Prohibits the contractor from:

(i) Selling or sharing the personal information.

**ADD-22**

§ 1798.140. Definitions [FN 1], CA CIVIL § 1798.140

(ii) Retaining, using, or disclosing the personal information for any purpose other than for the business purposes specified in the contract, including retaining, using, or disclosing the personal information for a commercial purpose other than the business purposes specified in the contract, or as otherwise permitted by this title.

(iii) Retaining, using, or disclosing the information outside of the direct business relationship between the contractor and the business.

(iv) Combining the personal information that the contractor receives pursuant to a written contract with the business with personal information that it receives from or on behalf of another person or persons, or collects from its own interaction with the consumer, provided that the contractor may combine personal information to perform any business purpose as defined in regulations adopted pursuant to paragraph (10) of subdivision (a) of Section 1798.185, except as provided for in paragraph (6) of subdivision (e) and in regulations adopted by the California Privacy Protection Agency.

(B) Includes a certification made by the contractor that the contractor understands the restrictions in subparagraph (A) and will comply with them.

(C) Permits, subject to agreement with the contractor, the business to monitor the contractor's compliance with the contract through measures, including, but not limited to, ongoing manual reviews and automated scans and regular assessments, audits, or other technical and operational testing at least once every 12 months.

(2) If a contractor engages any other person to assist it in processing personal information for a business purpose on behalf of the business, or if any other person engaged by the contractor engages another person to assist in processing personal information for that business purpose, it shall notify the business of that engagement, and the engagement shall be pursuant to a written contract binding the other person to observe all the requirements set forth in paragraph (1).

(k) "Cross-context behavioral advertising" means the targeting of advertising to a consumer based on the consumer's personal information obtained from the consumer's activity across businesses, distinctly-branded websites, applications, or services, other than the business, distinctly-branded website, application, or service with which the consumer intentionally interacts.

(*l*) "Dark pattern" means a user interface designed or manipulated with the substantial effect of subverting or impairing user autonomy, decisionmaking, or choice, as further defined by regulation.

(m) "Deidentified" means information that cannot reasonably be used to infer information about, or otherwise be linked to, a particular consumer provided that the business that possesses the information:

(1) Takes reasonable measures to ensure that the information cannot be associated with a consumer or household.

(2) Publicly commits to maintain and use the information in deidentified form and not to attempt to reidentify the information, except that the business may attempt to reidentify the information solely for the purpose of determining whether its deidentification processes satisfy the requirements of this subdivision.

**ADD-23**

§ 1798.140. Definitions [FN 1], CA CIVIL § 1798.140

(3) Contractually obligates any recipients of the information to comply with all provisions of this subdivision.

(n) "Designated methods for submitting requests" means a mailing address, email address, internet web page, internet web portal, toll-free telephone number, or other applicable contact information, whereby consumers may submit a request or direction under this title, and any new, consumer-friendly means of contacting a business, as approved by the Attorney General pursuant to Section 1798.185.

(o) "Device" means any physical object that is capable of connecting to the Internet, directly or indirectly, or to another device.

(p) "Homepage" means the introductory page of an internet website and any internet web page where personal information is collected. In the case of an online service, such as a mobile application, homepage means the application's platform page or download page, a link within the application, such as from the application configuration, "About," "Information," or settings page, and any other location that allows consumers to review the notices required by this title, including, but not limited to, before downloading the application.

(q) "Household" means a group, however identified, of consumers who cohabitate with one another at the same residential address and share use of common devices or services.

(r) "Infer" or "inference" means the derivation of information, data, assumptions, or conclusions from facts, evidence, or another source of information or data.

(s) "Intentionally interacts" means when the consumer intends to interact with a person, or disclose personal information to a person, via one or more deliberate interactions, including visiting the person's website or purchasing a good or service from the person. Hovering over, muting, pausing, or closing a given piece of content does not constitute a consumer's intent to interact with a person.

(t) "Nonpersonalized advertising" means advertising and marketing that is based solely on a consumer's personal information derived from the consumer's current interaction with the business with the exception of the consumer's precise geolocation.

(u) "Person" means an individual, proprietorship, firm, partnership, joint venture, syndicate, business trust, company, corporation, limited liability company, association, committee, and any other organization or group of persons acting in concert.

(v)(1) "Personal information" means information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household. Personal information includes, but is not limited to, the following if it identifies, relates to, describes, is reasonably capable of being associated with, or could be reasonably linked, directly or indirectly, with a particular consumer or household:

(A) Identifiers such as a real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, social security number, driver's license number, passport number, or other similar identifiers.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.     5

**ADD-24**

§ 1798.140. Definitions [FN 1], CA CIVIL § 1798.140

(B) Any personal information described in subdivision (e) of Section 1798.80.

(C) Characteristics of protected classifications under California or federal law.

(D) Commercial information, including records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies.

(E) Biometric information.

(F) Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet website application, or advertisement.

(G) Geolocation data.

(H) Audio, electronic, visual, thermal, olfactory, or similar information.

(I) Professional or employment-related information.

(J) Education information, defined as information that is not publicly available personally identifiable information as defined in the Family Educational Rights and Privacy Act (20 U.S.C. Sec. 1232g; 34 C.F.R. Part 99)).

(K) Inferences drawn from any of the information identified in this subdivision to create a profile about a consumer reflecting the consumer's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes.

(L) Sensitive personal information.

(2) "Personal information" does not include publicly available information or lawfully obtained, truthful information that is a matter of public concern. For purposes of this paragraph, "publicly available" means: information that is lawfully made available from federal, state, or local government records, or information that a business has a reasonable basis to believe is lawfully made available to the general public by the consumer or from widely distributed media; or information made available by a person to whom the consumer has disclosed the information if the consumer has not restricted the information to a specific audience. "Publicly available" does not mean biometric information collected by a business about a consumer without the consumer's knowledge.

(3) "Personal information" does not include consumer information that is deidentified or aggregate consumer information.

**ADD-25**

§ 1798.140. Definitions [FN 1], CA CIVIL § 1798.140

(w) "Precise geolocation" means any data that is derived from a device and that is used or intended to be used to locate a consumer within a geographic area that is equal to or less than the area of a circle with a radius of 1,850 feet, except as prescribed by regulations.

(x) "Probabilistic identifier" means the identification of a consumer or a consumer's device to a degree of certainty of more probable than not based on any categories of personal information included in, or similar to, the categories enumerated in the definition of personal information.

(y) "Processing" means any operation or set of operations that are performed on personal information or on sets of personal information, whether or not by automated means.

(z) "Profiling" means any form of automated processing of personal information, as further defined by regulations pursuant to paragraph (16) of subdivision (a) of Section 1798.185, to evaluate certain personal aspects relating to a natural person and in particular to analyze or predict aspects concerning that natural person's performance at work, economic situation, health, personal preferences, interests, reliability, behavior, location, or movements.

(aa) "Pseudonymize" or "Pseudonymization" means the processing of personal information in a manner that renders the personal information no longer attributable to a specific consumer without the use of additional information, provided that the additional information is kept separately and is subject to technical and organizational measures to ensure that the personal information is not attributed to an identified or identifiable consumer.

(ab) "Research" means scientific analysis, systematic study, and observation, including basic research or applied research that is designed to develop or contribute to public or scientific knowledge and that adheres or otherwise conforms to all other applicable ethics and privacy laws, including, but not limited to, studies conducted in the public interest in the area of public health. Research with personal information that may have been collected from a consumer in the course of the consumer's interactions with a business' service or device for other purposes shall be:

(1) Compatible with the business purpose for which the personal information was collected.

(2) Subsequently pseudonymized and deidentified, or deidentified and in the aggregate, such that the information cannot reasonably identify, relate to, describe, be capable of being associated with, or be linked, directly or indirectly, to a particular consumer, by a business.

(3) Made subject to technical safeguards that prohibit reidentification of the consumer to whom the information may pertain, other than as needed to support the research.

(4) Subject to business processes that specifically prohibit reidentification of the information, other than as needed to support the research.

(5) Made subject to business processes to prevent inadvertent release of deidentified information.

ADD-26

(6) Protected from any reidentification attempts.

(7) Used solely for research purposes that are compatible with the context in which the personal information was collected.

(8) Subjected by the business conducting the research to additional security controls that limit access to the research data to only those individuals as are necessary to carry out the research purpose.

(ac) "Security and integrity" means the ability of:

(1) Networks or information systems to detect security incidents that compromise the availability, authenticity, integrity, and confidentiality of stored or transmitted personal information.

(2) Businesses to detect security incidents, resist malicious, deceptive, fraudulent, or illegal actions and to help prosecute those responsible for those actions.

(3) Businesses to ensure the physical safety of natural persons.

(ad)(1) "Sell," "selling," "sale," or "sold," means selling, renting, releasing, disclosing, disseminating, making available, transferring, or otherwise communicating orally, in writing, or by electronic or other means, a consumer's personal information by the business to a third party for monetary or other valuable consideration.

(2) For purposes of this title, a business does not sell personal information when:

(A) A consumer uses or directs the business to intentionally:

(i) Disclose personal information.

(ii) Interact with one or more third parties.

(B) The business uses or shares an identifier for a consumer who has opted out of the sale of the consumer's personal information or limited the use of the consumer's sensitive personal information for the purposes of alerting persons that the consumer has opted out of the sale of the consumer's personal information or limited the use of the consumer's sensitive personal information.

(C) The business transfers to a third party the personal information of a consumer as an asset that is part of a merger, acquisition, bankruptcy, or other transaction in which the third party assumes control of all or part of the business, provided that information is used or shared consistently with this title. If a third party materially alters how it uses or shares the personal information of a consumer in a manner that is materially inconsistent with the promises made at the time of collection, it shall provide prior notice of the new or changed practice to the consumer. The notice shall be sufficiently prominent and robust to ensure that existing consumers can easily exercise their choices consistently with this title. This subparagraph does not authorize a

§ 1798.140. Definitions [FN 1], CA CIVIL § 1798.140

business to make material, retroactive privacy policy changes or make other changes in their privacy policy in a manner that would violate the Unfair and Deceptive Practices Act (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code).

(ae) "Sensitive personal information" means:

(1) Personal information that reveals:

(A) A consumer's social security, driver's license, state identification card, or passport number.

(B) A consumer's account log-in, financial account, debit card, or credit card number in combination with any required security or access code, password, or credentials allowing access to an account.

(C) A consumer's precise geolocation.

(D) A consumer's racial or ethnic origin, religious or philosophical beliefs, or union membership.

(E) The contents of a consumer's mail, email, and text messages unless the business is the intended recipient of the communication.

(F) A consumer's genetic data.

(2)(A) The processing of biometric information for the purpose of uniquely identifying a consumer.

(B) Personal information collected and analyzed concerning a consumer's health.

(C) Personal information collected and analyzed concerning a consumer's sex life or sexual orientation.

(3) Sensitive personal information that is "publicly available" pursuant to paragraph (2) of subdivision (v) shall not be considered sensitive personal information or personal information.

(af) "Service" or "services" means work, labor, and services, including services furnished in connection with the sale or repair of goods.

(ag)(1) "Service provider" means a person that processes personal information on behalf of a business and that receives from or on behalf of the business consumer's personal information for a business purpose pursuant to a written contract, provided that the contract prohibits the person from:

ADD-28

§ 1798.140. Definitions [FN 1], CA CIVIL § 1798.140

(A) Selling or sharing the personal information.

(B) Retaining, using, or disclosing the personal information for any purpose other than for the business purposes specified in the contract for the business, including retaining, using, or disclosing the personal information for a commercial purpose other than the business purposes specified in the contract with the business, or as otherwise permitted by this title.

(C) Retaining, using, or disclosing the information outside of the direct business relationship between the service provider and the business.

(D) Combining the personal information that the service provider receives from, or on behalf of, the business with personal information that it receives from, or on behalf of, another person or persons, or collects from its own interaction with the consumer, provided that the service provider may combine personal information to perform any business purpose as defined in regulations adopted pursuant to paragraph (10) of subdivision (a) of Section 1798.185, except as provided for in paragraph (6) of subdivision (e) of this section and in regulations adopted by the California Privacy Protection Agency. The contract may, subject to agreement with the service provider, permit the business to monitor the service provider's compliance with the contract through measures, including, but not limited to, ongoing manual reviews and automated scans and regular assessments, audits, or other technical and operational testing at least once every 12 months.

(2) If a service provider engages any other person to assist it in processing personal information for a business purpose on behalf of the business, or if any other person engaged by the service provider engages another person to assist in processing personal information for that business purpose, it shall notify the business of that engagement, and the engagement shall be pursuant to a written contract binding the other person to observe all the requirements set forth in paragraph (1).

(ah)(1) "Share," "shared," or "sharing" means sharing, renting, releasing, disclosing, disseminating, making available, transferring, or otherwise communicating orally, in writing, or by electronic or other means, a consumer's personal information by the business to a third party for cross-context behavioral advertising, whether or not for monetary or other valuable consideration, including transactions between a business and a third party for cross-context behavioral advertising for the benefit of a business in which no money is exchanged.

(2) For purposes of this title, a business does not share personal information when:

(A) A consumer uses or directs the business to intentionally disclose personal information or intentionally interact with one or more third parties.

(B) The business uses or shares an identifier for a consumer who has opted out of the sharing of the consumer's personal information or limited the use of the consumer's sensitive personal information for the purposes of alerting persons that the consumer has opted out of the sharing of the consumer's personal information or limited the use of the consumer's sensitive personal information.

(C) The business transfers to a third party the personal information of a consumer as an asset that is part of a merger, acquisition, bankruptcy, or other transaction in which the third party assumes control of all or part of the business, provided that information is used or shared consistently with this title. If a third party materially alters how it uses or shares the personal information

**ADD-29**

§ 1798.140. Definitions [FN 1], CA CIVIL § 1798.140

of a consumer in a manner that is materially inconsistent with the promises made at the time of collection, it shall provide prior notice of the new or changed practice to the consumer. The notice shall be sufficiently prominent and robust to ensure that existing consumers can easily exercise their choices consistently with this title. This subparagraph does not authorize a business to make material, retroactive privacy policy changes or make other changes in their privacy policy in a manner that would violate the Unfair and Deceptive Practices Act (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code).

(ai) "Third party" means a person who is not any of the following:

(1) The business with whom the consumer intentionally interacts and that collects personal information from the consumer as part of the consumer's current interaction with the business under this title.

(2) A service provider to the business.

(3) A contractor.

(aj) "Unique identifier" or "unique personal identifier" means a persistent identifier that can be used to recognize a consumer, a family, or a device that is linked to a consumer or family, over time and across different services, including, but not limited to, a device identifier; an Internet Protocol address; cookies, beacons, pixel tags, mobile ad identifiers, or similar technology; customer number, unique pseudonym, or user alias; telephone numbers, or other forms of persistent or probabilistic identifiers that can be used to identify a particular consumer or device that is linked to a consumer or family. For purposes of this subdivision, "family" means a custodial parent or guardian and any children under 18 years of age over which the parent or guardian has custody.

(ak) "Verifiable consumer request" means a request that is made by a consumer, by a consumer on behalf of the consumer's minor child, by a natural person or a person registered with the Secretary of State, authorized by the consumer to act on the consumer's behalf, or by a person who has power of attorney or is acting as a conservator for the consumer, and that the business can verify, using commercially reasonable methods, pursuant to regulations adopted by the Attorney General pursuant to paragraph (7) of subdivision (a) of Section 1798.185 to be the consumer about whom the business has collected personal information. A business is not obligated to provide information to the consumer pursuant to Sections 1798.110 and 1798.115, to delete personal information pursuant to Section 1798.105, or to correct inaccurate personal information pursuant to Section 1798.106, if the business cannot verify, pursuant to this subdivision and regulations adopted by the Attorney General pursuant to paragraph (7) of subdivision (a) of Section 1798.185, that the consumer making the request is the consumer about whom the business has collected information or is a person authorized by the consumer to act on such consumer's behalf.

**Credits**

(Added by Stats.2018, c. 55 (A.B.375), § 3, eff. Jan. 1, 2019, operative Jan. 1, 2020. Amended by Stats.2018, c. 735 (S.B.1121), § 9, eff. Sept. 23, 2018, operative Jan. 1, 2020; Stats.2019, c. 748 (A.B.874), § 1, eff. Jan. 1, 2020; Stats.2019, c. 757 (A.B.1355), § 7.5, eff. Jan. 1, 2020; Initiative Measure (Prop. 24, § 14, approved Nov. 3, 2020), eff. Dec. 16, 2020, operative Jan. 1, 2023); Stats.2021, c. 525 (A.B.694), § 3, eff. Jan. 1, 2022, operative Jan. 1, 2023.)

**ADD-30**

§ 1798.140. Definitions [FN 1], CA CIVIL § 1798.140

**Editors' Notes**

**OPERATIVE EFFECT**

<For effective and operative dates of Initiative Measure (Prop. 24), see § 31 of the Measure.>

<For operative effect of Title 1.81.5, see Civil Code § 1798.198.>

Notes of Decisions (1)

**Footnotes**

1    Section caption supplied by Prop. 24.

West's Ann. Cal. Civ. Code § 1798.140, CA CIVIL § 1798.140
Current with all laws through Ch. 997 of 2022 Reg.Sess.

*End of Document*    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**ADD-31**

United States Code Annotated
  Constitution of the United States
    Annotated
      Amendment I. Religion; Speech and the Press; Assembly; Petition

U.S.C.A. Const. Amend. I

Amendment I. Establishment of Religion; Free Exercise of Religion; Freedom
of Speech and the Press; Peaceful Assembly; Petition for Redress of Grievances

Currentness

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

<Historical notes and references are included in the full text document for this amendment.>

<For Notes of Decisions, see separate documents for clauses of this amendment:>

<USCA Const Amend. I--Establishment clause; Free Exercise clause>

<USCA Const Amend. I--Free Speech clause; Free Press clause>

<USCA Const Amend. I--Assembly clause; Petition clause>

U.S.C.A. Const. Amend. I, USCA CONST Amend. I
Current through P.L. 118-22. Some statute sections may be more current, see credits for details.

**End of Document**                                                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**ADD-32**

# CERTIFICATE OF SERVICE

Case Name:   **NetChoice, LLC v Rob Bonta**      No.   **23-2969 [Appeal]**

I hereby certify that on December 13, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**ADDENDUM**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On December 13, 2023, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

District Judge Beth Labson Freeman
San Jose Courthouse, Courtroom 3 – 5th Floor
280 South 1st Street
San Jose, CA 95113

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on December 13, 2023, at Los Angeles, California.

|                    J. Sissov                    |                    /s/ *J. Sissov*                    |
| :---: | :---: |
| Declarant | Signature |

SA2023305531